## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| | ) | |
| JAMES COURTNEY RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:21-cv-04001-NKL |
| v. | ) | |
| | ) | |
| CANDACE PARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## ORDER

Before the Court is Plaintiff James Ray's Motion for a Physical Examination pursuant to Fed. R. Civ. P. 35(a) (the "Motion"). *See* Doc. 54. Mr. Ray asks the Court to order a paternity test to determine whether he is the biological father of A.H., Defendant Candace Park's child. After careful review of the parties' submissions, the record, and the applicable law, the Court GRANTS Mr. Ray's Motion. As soon as practicable, the parties shall meet and confer to discuss the steps necessary to obtain buccal swabs from A.H., Ms. Park, and Mr. Ray and identify an AABB certified facility capable of performing the paternity test. After the logistical challenges have been resolved, the parties shall file a joint status report proposing a procedure and a timeline for the paternity test, including the information required by Rule 35(a)(2)(B).

### I.     Background

Mr. Ray was an inmate at Booneville Correctional Center ("BCC"), where he claims that he was sexually assaulted by Candace Park, who was, at the time, a prison guard at BCC. *See* Doc. 33, ¶¶ 24–33. Mr. Ray claims that Ms. Park sexually assaulted him twice, once on February 16, 2020, and again the next day. *Id.* Mr. Ray alleges that he reported the assault to

1

officials at BCC, but that, beyond taking his written statement and performing blood tests for gonorrhea and chlamydia, the prison took no action to investigate his report. *See id.,* ¶¶ 38–40. He also claims that he received deficient health care from BCC medical contractors following the assault. *Id.*, ¶¶ 48–76. As a result, Mr. Ray has filed multiple claims against Ms. Park, State officials, and BCC medical contractors under 28 U.S.C. § 1983. *Id.,* ¶¶ 77–111. Mr. Ray also brings Missouri state law claims against Ms. Park and BCC medical contractors. *See generally id.,* ¶¶ 112–129.

On September 20, 2020, Mr. Ray learned that Ms. Park was pregnant, and on October 26, 2020, he learned that Ms. Park gave birth to A.H. *Id.,* ¶¶ 36, 41. Mr. Ray also learned that Ms. Park claimed, in divorce proceedings filed in December of 2020, that a third-man, and not her then-husband, Daniel Park, was A.H.'s biological father. *See* Doc. 54-4, ¶ 4. Because paternity was an issue, the Circuit Court for Saline County ("Circuit Court") ordered that A.H. undergo DNA testing on March 29, 2021. *Id.* ¶ 5. The results of those tests were provided to both Mr. and Ms. Park. Mr. Ray has not obtained the test results, but he believes that he may be the biological father of Ms. Park's child, A.H. For that reason, on June 11, 2021, Mr. Ray attempted to intervene in the pending divorce proceedings between Ms. Park and her husband. *Id.* ¶ 7. That court denied Mr. Ray's motion to intervene, and advised him that, if he believed he was the biological father of A.H., he could file his own paternity action. *Id*. ¶¶ 14–17, 20. Shortly thereafter, on July 27, 2020, Mr. Ray filed his Motion in this Court.

2

## II. Discussion

### A. Federal Rule of Civil Procedure 35: Motion for Physical Examination

A court "may order a party[1] whose mental or physical condition . . . is in controversy to submit to a physical examination by a suitably licensed examiner" after a showing of good cause. *See* Fed. R. Civ. P. 35(a); *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). Granting or denying a motion for a physical examination "rests in the sound discretion of the trial court." *Coca-Cola Bottling Co. of P.R. v. Negron Torres*, 255 F.2d 149, 153 (1st Cir. 1958) (citing *Bucher v. Krause*, 200 F.2d 576, 584 (7th Cir. 1952)). Like other rules of discovery, Rule 35 should be "broadly and liberally construed." *See Stillman v. Wal-Mart Stores East I, L.P.*, No. 4:19-CV-00222, 2019 WL 11851712, at *1 (W.D. Mo. Dec. 3, 2019) (citing *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 4:18-CV-06037-DGK, 2019 WL 3291570, at *1 (W.D. Mo. July 22, 2019)).

### 1. Whether the Physical Condition Is in Controversy

The Court begins with Rule 35's "in controversy" requirement. To order a physical examination under Rule 35, the physical condition at issue must be "really and genuinely" in controversy. *Schlagenhauf*, 379 U.S. at 118. Despite Rule 35's age and widespread use, it appears that no court has outlined the scope of this requirement.

Both parties suggest that to properly be "in controversy," the physical condition—here, the paternity of Ms. Park's child—must be the "subject" of the litigation. *See* Doc. 54, at 4; Doc. 58, at 2. While being the subject of the litigation may be *enough* to bring a physical condition "in controversy' under Rule 35, it seems unlikely that it is *necessary*. After all, courts have

---

[1] The Court's authority extends to anyone in the custody or control of a party. *See* Fed. R. Civ. P. 35(a)(1)

3

3

Case 2:21-cv-04001-NKL   Document 64   Filed 09/24/21   Page 3 of 9

authorized physical examinations—including DNA tests—when the physical condition was not itself the subject of the litigation.  For example, courts have ordered paternity tests under Rule 35 to ensure the proper plaintiff is before the court.  *See e.g.*, *Howell v. Hillcorp Energy Co.*, No. CIV.A. 12-0293, 2013 WL 1455758, at \*3 (E.D. La. Apr. 9, 2013) (finding paternity in controversy as it was necessary to determine whether plaintiff had standing).  Several courts have also ordered paternity tests when doing so would establish one of the central elements of the underlying action.  *See Ashby v. Mortimer*, 329 F.R.D. 650, 654 (D. Idaho 2019), *reconsideration denied*, No. 4:18-CV-00143-DCN, 2019 WL 1548571 (D. Idaho Apr. 9, 2019) (ordering defendant doctor to submit to paternity test because, if defendant were the father of plaintiff's child, defendant was negligent); *Strong v. Wisconsin*, No. 07-C-086-C, 2007 WL 5445863, at \*1 (W.D. Wis. May 25, 2007) (ordering defendant, an employee at a state mental health institution, to submit to a paternity test after plaintiff, a maximum security patient, claimed defendant sexually assaulted him); *See Burt v. Winona Health*, No. CV 16-1085 (DWF/FLN), 2018 WL 3647230, at \*2 (D. Minn. Aug. 1, 2018) (finding paternity was "really and genuinely in controversy" because child's genetic makeup was an important element of the defense that the child's injuries were caused by his genetic disability, not the actions of the defendants).

Several state courts have held that a physical condition is "in controversy" when "the merits of an issue . . . may turn on, or be directly affected, by the physical or mental condition of the party sought to be examined." *State ex rel. C.S. v. Dowd*, 923 S.W.2d 444, 448 (Mo. Ct. App. 1996) (analyzing state and federal cases to interpret state law equivalent to Rule 35) (citing *Raymond v. Raymond*, 105 R.I. 380, 385 (1969) ("As used in both federal and Rhode Island rules 35(a), the phrase 'in controversy' contemplates that a determination of the merits of an issue in

4

the case within which the motion for physical or mental examination is made, may turn on, or be directly affected, by the physical or mental condition of the party sought to be examined.")); *see also Wadlow v. Humberd*, 27 F. Supp. 210 (W.D. Mo. 1939) (looking to the elements of libel to determine whether the requested physical examination satisfied the "in controversy" requirement).

At bottom, the interpretation advanced by both parties is too narrow. Rule 35 could easily have been written to apply only to conditions that are the *subject* of a pending lawsuit; it was not. This Court will follow the standard announced in *Dowd* and *Raymond*. A physical condition is "in controversy when 'the merits of an issue . . . may turn on, or be directly affected, by the physical or mental condition of the party sought to be examined.'" *Dowd*, 923 S.W.2d at 448; *Raymond*, 105 R.I. at 385.

Here, the paternity of Ms. Park's child is "in controversy" because, contrary to the Defendants' assertion, if Mr. Ray is the father, it not only proves that Mr. Ray and Ms. Park had sexual contact, but it proves that, under Missouri law, Ms. Park sexually assaulted Mr. Ray. *See* RSMo § 566.145 (making it a class E felony for a prison employee to have sexual contact with a prisoner). Accordingly, the paternity of Ms. Park's child is "in controversy" within the meaning of Rule 35. *See Ashby*, 329 F.R.D. at 650;[2] *Strong*, 2007 WL 5445863, at *1; *see also Burt*, 2018 WL 3647230, at *2.

---

[2] Defendants' attempts to distinguish Mr. Ray's request from the one in *Ashby* only further reinforce this conclusion. The Defendants argue that paternity was "in controversy" in *Ashby* because "if the DNA test showed biological paternity, plaintiffs would prevail; conversely, if it showed non-paternity, defendant would prevail." *See* Doc. 58 at 3. The same principle is true here. If the DNA test shows that Mr. Ray is the child's biological father, then it will prove that Ms. Park had sexual intercourse with Mr. Ray while he was a prisoner at BCC, in violation of Missouri law. The fact that a negative paternity test would not disprove Mr. Ray's allegations does not eliminate the probative value of the test.

5

## 2. **Whether There Is Good Cause**

The Court next turns to the good cause requirement. "Whether good cause is established depends on both relevance and need." *Pearson v. Norfolk-Southern Ry., Co., Inc.*, 178 F.R.D. 580, 582 (M.D. Ala. 1998) (citations omitted).

The Court has already discussed the relevance of the information Mr. Ray seeks: paternity bears on a central element of Mr. Ray's claim.

Turning to need, the court must examine the ability of the movant to obtain the desired information by other means. *Id.* (citing *Schlagenhauf*, 379 U.S. at 118, 85 S.Ct. 234). When information is unavailable through another avenue, there is good cause to order a Rule 35 examination. *Pearson,* 178 F.R.D. at 582; *D'Angelo v. Potter*, 224 F.R.D. 300, 304 (D. Mass. 2004) (finding good cause to order a DNA examination where plaintiff lacked alternative forms of discovery which would allow her to prove her allegations at trial).

Here, Ms. Park denies sexual contact with Mr. Ray, consensual or otherwise. There is no discovery device, other than a physical examination, that would potentially permit Mr. Ray to prove his allegations with physical evidence. Defendants argue that Mr. Ray does have an alternative—that he can file a paternity action in Missouri state court. However, requiring litigants like Mr. Ray to institute a state court action to obtain discovery—that technically is available under the Federal Rules—would be inefficient and a waste of the resources of the litigants and the state and federal courts. It would add to the already crowded dockets of state court judges, and delay resolution of this federal lawsuit until the related state court proceedings were resolved.

Moreover, Mr. Ray does not necessarily seek the attendant benefits and responsibilities that stem from a conclusive finding of paternity under state law; at present, he is only trying to

prove his allegation of sexual assault. There may be real reasons why *neither* party would want

Mr. Ray determined to be the father of A.H. as a matter of state law. To require the filing of a

paternity action in state court that may implicate rights and obligations beyond the scope of the

present case in order to produce evidence central to this case is unreasonable. The Court will not

require one party to choose between a domestic relations lawsuit and forgoing discovery that

may be critical to its case.

Furthermore, requiring a buccal swab from A.H.—and if necessary, Ms. Park—would be

minimally invasive and would not significantly infringe on the privacy of either Ms. Park or

A.H. *See Ashby*, 329 F.R.D. at 656 (citing *McGrath v. Nassau Health Care Corp.*, 209 F.R.D.

55, 61 (E.D.N.Y. 2002) (a sample which can be obtained by a cheek swab is "only a minimal

intrusion on [a] party's privacy rights."). A protective order can protect against improper

disclosure of the test results. Furthermore, A.H. is too young to understand the implications of a

buccal swab and the larger situation. Especially when weighed against the potential importance

of the DNA evidence, the minimal imposition is more than justified under Rule 35.

Defendants' suggestion that permitting discovery in this circumstance would open the

door to paternity tests for all pregnant corrections officers is overstated. It would certainly be

troubling for any child old enough to understand the context to be subjected to a court-ordered

paternity test in situations such as this one. And it would be difficult for a mother wrongfully

accused of sexual misconduct to see her child subjected to a paternity test by a prisoner over

whom she had had oversight. However, in light of the unique circumstances of this case—the

specificity of the allegations, the fact that Mr. Ray complained of the assault to multiple BCC

staff members and made a written report well before requesting a paternity test, that Ms. Park

gave birth approximately eight or nine months after Mr. Ray alleges he was sexually assaulted,

7

that Mr. Ray seems to have provided a specific date on which the assault occurred *before* he knew when Ms. Park's child would be due, and that Ms. Park was involved in divorce proceedings where the paternity of the minor child was at issue, *see* Doc. 33, ¶¶ 36–41—the discovery is warranted.

### B. Time, Place, Manner, Conditions, and Scope of the Examination

After a Court determines that a physical examination is appropriate under Rule 35(a)(1), its Order must "specify the time, place, manner, conditions, and scope of the examination, as well as the persons who will perform it." *See* Fed. R. Civ. P. 35(a)(2)(B). This case presents unique logistical challenges, and accordingly the parties shall, as soon as practicable, confer and identify the steps necessary to obtain the buccal swabs necessary to perform the DNA test.[3] The parties should also designate an AABB accredited facility capable of performing the DNA analysis and determine the timeframe by which the facility could conclude the paternity test. On or before October 13, 2021, the parties shall file a joint status report proposing a timeline and procedure for accomplishing the paternity test, including the information required by Rule 35(a)(2)(B).[4]

### III. Conclusion

The paternity of Ms. Park's child is "in controversy" under Rule 35 because the merits of Mr. Ray's sexual assault allegations—and related § 1983 claims—may turn on, or be directly affected by, whether he is the father of Ms. Park's child. *See Dowd*, 923 S.W.2d at 448. There is good cause to order the DNA test. Mr. Ray cannot obtain the information he seeks through

---

[3] Nothing in this order should be read to require that the paternity test be run on *blood* samples. The Court will order A.H., and if necessary, Ms. Park, to submit to buccal swabs, but will not require any blood test.

[4] In the event the parties cannot agree on the procedure to be followed, they should arrange a teleconference with Chambers pursuant to Local Civil Rule 37.1.

8

another discovery tool, and the Court will not require him to file a paternity action in state court simply to obtain evidence to litigate in federal court. Accordingly, Mr. Ray's Motion (Doc. 54) is GRANTED. Because this case presents unique logistical challenges, the parties shall meet and confer as soon as practicable to discuss next steps, including when and how DNA samples will be collected, by whom, and where, as well as who will perform the DNA analysis, and where and when. The parties shall file a joint status report on or before October 13, 2021 informing the Court of the outcome of these discussions.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: 9/24/2021
Jefferson City, Missouri

9